IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 2 7 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

MICHAEL BRADFORD,

        Plaintiff,

v.

DWAYNE CARTER, et al.,

        Defendants.

CIVIL ACTION NO.

1:09-CV-00156-JEC

## ORDER & OPINION

This case is before the Court on Plaintiff's Motion to Cancel (Set aside) Order for Early Neutral Evaluation and Notice of Intent to File First Amended Complaint [77]; Defendants Universal Motown Republic Records Group, a division of UMG Recordings, Inc., Rondor Music International, Inc., The Royalty Network, Inc., Darius J. Harrison, and Warner-Tamerlane Publishing Corp.'s "Defendants" Cross-Motion for Sanctions [80]; Plaintiff's Motion in Support of Sanctions [96]; Plaintiff's Motion for Leave to File Third Amended Complaint [99]; Plaintiff's (Amended) Motion for Leave to File Third Amended Complaint [101]; Plaintiff's Motion for Leave to File Sur-Reply in Further Support of Plaintiff's Motion for Sanctions [105]; Defendants' Motion for Status Conference [108]; Defendant Cash Money Records, Inc.'s Motion to Dismiss the Complaint [109]; Plaintiff's Motion for Extension of Time to File Reply in Support of Motion for

Leave to File Third Amended Complaint [110]; Defendant Young Money Publishing, Inc.'s Motion to Set Aside Entry of Default and Dismiss the Complaint [113]; and Plaintiff's Request for Entry of Default Against Three Nails and a Crown [116].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion to Cancel (Set aside) Order for Early Neutral Evaluation and Notice of Intent to File First Amended Complaint [77] should be **GRANTED**; Defendants' Cross-Motion for Sanctions [80] should be **GRANTED**; Plaintiff's Motion in Support of Sanctions [96] should be **DENIED**; Plaintiff's Motion for Leave to File Third Amended Complaint [99] should be **GRANTED**; Plaintiff's (Amended) Motion for Leave to File Third Amended Complaint [101] should be **GRANTED**; Plaintiff's Motion for Leave to File Sur-Reply in Further Support of Plaintiff's Motion for Sanctions [105] should be **GRANTED**; Defendants' Motion for Status Conference [108] should be **DENIED**; Defendant Cash Money Records, Inc.'s Motion to Dismiss the Complaint [109] should be **GRANTED**; Plaintiff's Motion for Extension of Time to File Reply in Support of Motion for Leave to File Third Amended Complaint [110] should be **GRANTED**; Defendant Young Money Publishing, Inc.'s Motion to Set Aside Entry of Default and Dismiss the Complaint [113] should be **GRANTED**; and Plaintiff's Request for Entry of Default Against Three

Nails and a Crown [116] is hereby **DENIED**.

## BACKGROUND

This suit arises out of plaintiff's allegations of copyright infringement.  Plaintiff contends that a musical composition titled *Mrs. Officer*, released on the album *Tha Carter III* and performed by defendant Dwayne Carter, infringes upon the copyright of two of plaintiff's related musical works: *Popeye* (an instrumental) and *Crush* (*Popeye* with Lyrics). (Prelim. Report and Disc. Plan [43] at 3.)  As a result of this alleged infringement, plaintiff contends that defendants have violated both the Copyright Act and the Lanham Act. (First Am. Compl. [6] at ¶¶ 48-49.)

This case was originally filed *pro se* on January 21, 2009, and a number of motions were subsequently filed.  Before a ruling on any of the pending motions, however, the Court granted the parties' joint request to refer the matter to Early Neutral Evaluation ("ENE"). (Order of August 13, 2009 [66].)  Consequently, the Court denied without prejudice all of the pending motions and administratively terminated this action until the ENE process was complete.

On September 10, 2009, a month after the matter was referred to ENE, plaintiff's present counsel filed his entry of appearance. (*See* Notice of Appearance by S. Quinn Johnson [70].)  A day later, the parties submitted a joint list of neutral evaluators and reported that they had agreed upon William B. Hill, Jr., Esq. to conduct the

ENE.  (Joint List of Neutral Evaluators [71].)  The Court granted the parties' choice of a neutral evaluator, after which the parties, at the Court's direction, submitted a proposed Scheduling Order that set the date for the ENE for November 10, 2009.  (Proposed Scheduling Order [74].)

Unfortunately, the ENE did not occur.  The Court learned of this development on November 6, 2009, just days before the parties' scheduled mediation, when defendants notified the Court of plaintiff's cancellation of the mediation over their objections. (Defs.' Notice of Pl.'s Unilateral Cancellation of Early Neutral Evaluation [75].)  Since then, relations between the parties have greatly deteriorated, with each side requesting sanctions against the other.  Further, the parties have filed multiple motions raising many different issues.  These issues include: (1) plaintiff's request for the Court to set aside its earlier Order referring the matter to ENE ([77]); (2) the parties' cross-motions for sanctions (Defs.' Cross-Motion for Sanctions [80] and Pl.'s Motion in Support of Sanctions [96]); (3) plaintiff's request for leave to file a third amended complaint ([101]); (4) defendants' request for a status conference ([108]); (5) defendant Cash Money Records' request for dismissal due to insufficient service ([109]); (6) defendant Young Money Publishing's request to set aside a Default Judgment, and also to dismiss due to insufficient service ([113]); and (7) plaintiff's

4

Request for a Default Judgment against defendant Three Nails and a Crown ([116]).

## DISCUSSION

### I.   Plaintiff's Request to Set Aside the Court's Order for ENE and the Respective Parties' Motions for Sanctions.

Presently before the Court are Plaintiff's Motion to Cancel (Set aside) Order for Early Neutral Evaluation and Notice of Intent to File First Am. Compl. [77] ("Pl.'s Mot. Set Aside ENE"), as well as several motions arising out of plaintiff's cancellation of the mediation.[1]

Plaintiff moves this Court to set aside its previous Order referring this matter to ENE on the ground that defense counsel tricked plaintiff, who was then *pro se*, into agreeing to undergo ENE. While defendants do not desire to participate in mediation, given plaintiff's allegation, they nonetheless oppose plaintiff's motion on the ground that his stated reasons are pretextual.   Moreover, defendants contend that because plaintiff unilaterally cancelled the mediation, over defendants' objections, and later offered shifting and baseless explanations for that act, the Court should sanction plaintiff by forcing him to reimburse defendants for the cost of

---

[1]   Defendants' Cross-Motion for Sanctions [80]; Plaintiff's Motion in Support of Sanctions [96]; and Plaintiff's Motion for Leave to File Sur-Reply in Further Support of Plaintiff's Motion for Sanctions [105].

AO 72A
(Rev.8/82)

preparing for the ENE, as well as for having to respond to plaintiff's untrue explanations for his decision to cancel.

In reply, plaintiff's counsel has abandoned his initial explanation for cancelling mediation, and instead adds both a new reason as to why mediation was canceled and a request that defendants, as well as their counsel, be sanctioned under various state and federal rules. In further response, however, defendants argue that plaintiff's second reason for cancellation is still false. In a sur-reply to this response, plaintiff's counsel offers yet another reason why the ENE was cancelled. Defendants have objected to the filing of this sur-reply.

After reviewing the record, the Court concludes that Plaintiff's Motion to Cancel (Set Aside) Order for Early Neutral Evaluation and Notice of Intent to File First Amended Complaint [77] should be **GRANTED**, Plaintiff's Motion in Support of Sanctions [96] should be **DENIED**, Plaintiff's Motion for Leave to File Sur-Reply in Further Support of Plaintiff's Motion for Sanctions [105] should be **GRANTED**, and Defendants' Cross-Motion for Sanctions [80] should be **GRANTED**.

## A.   Background

Defendants' proposal to refer this dispute to ENE first occurred on May 18, 2009, when defendants filed their separate Preliminary Report and Discovery Plan [43]. (*See also* [79] Decl. of Cynthia S. Arato ("Arato Decl."), counsel to defendants, at ¶ 3)(stating that

6

neither defendants nor their counsel communicated with plaintiff about settlement, alternative dispute resolution, or ENE before May 18, 2009.) Defendants had been unable to file a joint report, due to plaintiff's lack of cooperation in participating in a Rule 26 conference. Because of plaintiff's refusal to comply with his Rule 26 obligations, coupled with defendants' conclusion that plaintiff's claims were meritless, defendants requested that discovery be both phased and actively supervised. (Prelim. Report [43] at 10-16.) Additionally, defendants suggested that it would be beneficial for the parties to participate in ENE. (Prelim. Report [43] at 10.) Nevertheless, defendants were clear that they believed that any settlement short of a dismissal with prejudice in exchange for defendants relinquishing their right to recover their fees and costs was unlikely. (Prelim. Report [43] at 18-19.)

While plaintiff considered defendants to have been "underhanded" and "unethical" in filing the Preliminary Report, plaintiff stated that he had "studied and learned the procedures and rules of the court through pro se guidance" and that he was "willing to discuss alternative resolutions." (Pl.'s May 28, 2009 Letter [49].) Consequently, in an email response a month later, defense counsel reminded plaintiff that he had previously "expressed an interest in a settlement discussion," and asked whether plaintiff would be willing to agree to ENE as suggested in the Preliminary Report.

AO 72A
(Rev.8/82)

(Arato Decl. [79] at Ex. 1 at ¶ 4; *see also* June 30, 2009 email to Michael Bradford, attached as Ex. A to Arato Decl. [79].)

Two weeks later, on July 13th, plaintiff agreed to undergo ENE. In agreeing to ENE, plaintiff made a point of emphasizing that he "reserved [the] right to maintain my civil claims in the event that no agreement is possible." (July 13, 2009 Letter to Cynthia Arato at 2, attached as Ex. B to Arato Decl. [79].)

Consequently, on July 31st, the parties submitted a Joint Motion for Order for Referral to Early Neutral Evaluation [65] to the Court. The Court granted the motion on August 13, 2009, and ordered the parties to submit a joint list of neutral evaluators by September 11, 2009. (*See* Order [66].)   However, in defense counsel's signature block for the joint motion for referral, defense counsel Cynthia Arato omitted Warner-Tamerlane Publishing Corp. from the list of defendants that she represented.   Additionally, in a June 19, 2009 discovery letter to plaintiff, Ms. Arato neglected to include Warner-Tamerlane in the list of companies that she represents. (June 19, 2009 Discovery letter, attached to the appendix of Pl.'s Resp. Defs.' Cross-Mot. Sanctions [92] at 20.)  These two omissions were obviously inadvertent, as Ms. Arato's representation of Warner-Tamerlane was disclosed in numerous documents, such as Warner-Tamerlane's Answer to plaintiff's Amended Complaint [53], as well as numerous other filings, both before and after the June 19 Discovery Letter. (*See*

8

Documents 54, 61, 63, 71.)

On September 10, 2009, plaintiff's present counsel filed an entry of appearance (Notice of Appearance by S. Quinn Johnson [70]), and a day later submitted a joint list of Neutral Evaluators to this Court. (*See* Joint List of Neutral Evaluators [71].)   Thereafter, plaintiff's counsel conferred with defendants' counsel on multiple issues regarding the coming ENE.  The parties agreed on the selection of a Neutral Evaluator, William B. Hill, Jr.; scheduled the ENE for November 10, 2009 and the deadline for submission of their ENE statements for November 3rd (later extended to November 5th); and agreed that Mr. Hill's fees would be split equally. (Arato Decl. [79] at ¶¶ 5-8 and accompanying Exs. C-F.)[2]

On November 4th, the day before the parties' ENE statements were due, plaintiff's counsel informed defense counsel that neither he nor his client would be participating in the ENE. (Arato Decl. [79] at ¶ 10.)  When asked for a reason for this decision, plaintiff's counsel said that his client did not believe the ENE would be productive because it was neither binding nor was it a formal mediation. (Arato Decl. [79] at ¶ 10.)   Consequently, despite defense counsel's objections to this last-minute cancellation, plaintiff's counsel

---

[2]    Mr. Hill was the most expensive of the three Neutrals recommended by plaintiff. *See* September 10th Email providing list of Neutral Evaluators, attached as Ex. C and to Arato Decl. [79].

9

called Mr. Hill to cancel the ENE.  (Arato Decl. [79] at ¶ 10.)  Mr.
Hill agreed not to charge any fee for the proceedings. (Arato Decl.
[79] at ¶ 11.)

At no time prior to plaintiff's November 4th cancellation did
plaintiff or his counsel suggest that anyone had been misled, or that
anyone had any concerns about the purpose, nature, or cost of the ENE
process. (Arato Decl. [79] at ¶¶ 13-14.)  Indeed, even as late as
November 2, 2009, plaintiff's counsel confirmed that he was
"look[ing] forward to meeting with" defense counsel at the ENE on
November 10th. (Arato Decl. [79] at 9 and Ex. G to Arato Decl. [79].)

On November 6, 2009, defendants notified the Court of
plaintiff's cancellation of the mediation over their objections.
(Defs.' Notice of Pl.'s Unilateral Cancellation of Pl.'s Unilateral
Cancellation [75].)  Five days later, on November 11th, plaintiff
filed the present motion requesting that the Court set aside its
previous Order on the grounds that plaintiff had been induced into
agreeing to ENE.

**B.    The Record Does Not Support Plaintiff's Counsel's Reasons
        for Canceling ENE**

Plaintiff initially requested that the Court set aside its Order
on the ground that defendants misled plaintiff into agreeing to ENE.
Specifically, plaintiff's counsel contends that defendants "cajol[ed]
Plaintiff into a costly non-binding  proceeding that would be out of

10

the reach of any evidentiary records" in order "to deplete the ability of Plaintiff to pursue this action for copyright infringement." (Pl.'s Mot. Set Aside ENE [77] at 2.)  While plaintiff completely abandons this explanation in subsequent pleadings for reasons that are equally unsupported, the record nonetheless demonstrates that this reason, as well as the later explanations, was false.

### 1.   Plaintiff's First Reason for Cancelling Mediation

The record does not support the first reason offered by plaintiff's counsel for unilaterally cancelling the ENE just days before it was scheduled to occur.   First, the record refutes plaintiff's allegation that the ENE was cancelled  because it was non-binding.  To the contrary, in agreeing to ENE, plaintiff made a point of stating that he "reserved [the] right to maintain my civil claims in the event that no agreement is possible." (July 13, 2009 Letter to Cynthia Arato [79] at 2.)   Moreover, considering that plaintiff had "studied and learned the procedures and rules of the court," (Pl.'s May 28, 2009 Letter [49] at 2), plaintiff should have been well aware that court-ordered mediation is always non-binding and inadmissible as evidence. *See* LR 16.7(B)(3) and (C), NDGa.   If plaintiff's "studies" had omitted this fact, plaintiff's counsel should certainly have clarified the point for him well before November 4th, when plaintiff unilaterally cancelled the ENE.

11

Second, the record also refutes the assertion that the ENE was cancelled because it was too costly.  Defense counsel fully disclosed the hourly rates of all three Neutral Evaluators.   Moreover, plaintiff's counsel agreed upon the most expensive evaluator, and agreed to split the cost of Mr. Hill's fees.  (Arato Decl. [79] at ¶ 7.)   Further, plaintiff's counsel made no mention of cost when explaining why his client was canceling the mediation, but instead simply stated that his client did not believe that the ENE would be "productive" because it was not "binding" and was not a "formal mediation." (Arato Decl. [79] at ¶ 10.)

Third, the record refutes the notion that plaintiff was "misled" or "cajol[ed]" into agreeing to ENE.  Given the fact that plaintiff had earlier referred to defense counsel as "underhanded" and "unethical," the notion that plaintiff would have relied on any representation made by defense counsel is not believable. Additionally, to the extent plaintiff was cajoled into agreeing to ENE, it did not take much pressure.  In accepting defendants' offer to refer this matter to ENE, plaintiff stated "I have been attempting to settle this matter long before being forced to file the instant infringement claim. Truly!" (Pl.'s July 13, 2009 Letter to Arato [79] at 2.)   Again, it is worth noting that in cancelling the ENE, plaintiff's counsel made no mention of any trickery on the part of defense counsel.

12

Finally, plaintiff's initial explanation cannot be sustained in light of the fact that plaintiff had been represented by counsel for two months prior to withdrawing from mediation.  Even if there were any truth to plaintiff's counsel's first explanation for the cancellation, counsel would have become well aware of these facts prior to November 4th.  Of course, given counsel's November 2nd email stating he was looking forward to meeting defense counsel at the ENE, it is clear that plaintiff's counsel was not being honest when he later attributed deception to defense counsel.

Consequently, the first reason offered by plaintiff for his abrupt cancellation is demonstrably false, and must be rejected as such.   Indeed, plaintiff's counsel apparently agrees, as he now abandons his initial explanation that defendants had tricked his client into agreeing to ENE.   Instead, in his reply to Defendants' Cross-Motion for Sanctions, he introduces a new reason.

## 2.   Plaintiff's Second Reason for Cancelling Mediation

Counsel's second explanation for cancelling the ENE is that his client was induced into agreeing to undergo ENE due to defense counsel Cynthia Arato's failure to truthfully disclose her representation of Defendant Warner-Tamerlane Publishing Corporation. Counsel bases this second explanation on: (1) Ms. Arato's failure to include Warner-Tamerlane in a June 19, 2009, letter that she had sent to plaintiff, setting out a list of defendants that she represented

13

and reminding plaintiff of his discovery obligations and (2) on defense counsel's failure to include Warner-Tamerlane as a defendant in her signature block on the parties' joint motion for referral, as well as making no reference to Warner-Tamerlane in the accompanying July 17 cover letter to plaintiff.  Plaintiff's counsel contends that "nearly three months passed after Defendants' Counsel's initial fraudulent disclosure . . . before Defendants' Counsel clandestinely disclosed in a pleading to the Court that Defendant Warner-Tamerlane Publishing Corporation was also represented by Defendants Counsel." (Pl.'s Resp. Defs.' Cross-Motion Sanctions [92] at 4.)   Plaintiff also states that the only communications between plaintiff and defense counsel regarding the ENE were the June 19 discovery letter, and the July 17 cover letter to the joint motion for referral. (Decl. of S. Quinn Johnson [93] ("Johnson Decl.") at ¶ 9, filed in support of Pl.'s Resp. Defs.' Cross- Mot. Sanctions [92].)

Plaintiff's second explanation is even worse than his first. Defendants note that the record does not support the contention that defense counsel hid her representation of Warner-Tamerlane.  Further, as defendants persuasively argue, plaintiff's counsel neglects to offer any explanation why a belief that Ms. Arato did not represent Warner-Tamerlane would have induced plaintiff to agree to participate in ENE, or why an awareness of that representation would have explained plaintiff's eleventh-hour cancellation.

14

From even a cursory glance of the record, defense counsel's representation of Warner-Tamerlane was clear the moment that the Answer of Defendant Warner-Tamerlane Publishing Group [53] was filed on June 8, 2009.[3]   Further, counsel's representation of Warner-Tamerlane is readily apparent as evidenced by the multiple filings filed on behalf of Warner-Tamerlane from June through September, 2009. *See* Document and Docket Entry Nos. 53, 54, 61, 62, 63, and 73.

Thus, contrary to plaintiff's suggestion that defense counsel's fraudulent representations lay hidden for nearly three months after its June 19 discovery letter to plaintiff, the record shows that a mere two weeks later, defense counsel's representation of Warner-Tamerlane was once again apparent when defendants filed a Motion to Compel Discovery [61] on July 2, 2009.   In fact, defendants' Motion to Compel [61], which included Warner-Tamerlane, includes the very same June 19 discovery letter that plaintiff's counsel now argues defense counsel used to mislead his client. *See* June 19, 2009 Discovery Letter, attached in support of Defendants' Motion to Compel [61] at 80.   Consequently, the Court concludes that not only was the omission of Warner-Tamerlane from the June 19 discovery letter and in Ms. Arato's signature block on the joint motion for referral clearly

---

[3] Plaintiff's counsel also acknowledges that defense counsel filed an Answer on behalf of Warner-Tamerlane. (Johnson Decl. [93] at ¶ 4.)

15

inadvertent, but also that no reasonable person could conclude from those two documents that defense counsel was trying to hide her representation of Warner-Tamerlane.

Further, plaintiff's counsel's assertion that the "Parties communications regarding ENE were limited to the June 19, 2009 Letter and the July 17, 2009 Letter" is a blatant misstatement of the record. Even had plaintiff's counsel not read the section of Defendants' Opposition to Plaintiff's Motion to Set Aside Early Neutral Evaluation [79] concerning Ms. Arato's email to plaintiff regarding the possibility of ENE, or plaintiff's enthusiastic acceptance, plaintiff's counsel's should still have been aware that his statement was incorrect. First, the June 19 letter only concerns discovery and has nothing to do with a possible ENE. Second, the July 17 letter, which is simply a cover letter with instructions for plaintiff as to how to handle the parties' joint motion for referral, explicitly references a July 14 letter between defense counsel and plaintiff.[4]

Finally, defendants rightly note that plaintiff's new excuse offers no reason how defendants "misrepresentation" could have (1) induced plaintiff into agreeing to mediation or (2) how it could have

---

[4] Additionally, plaintiff's counsel never fully explains how this letter, written by a paralegal, qualifies as an act of deception, as there is no reason why such a letter should reference any defendants at all. Unsurprisingly, it references none.

16

justified plaintiff's eleventh-hour cancellation. (Defs.' Resp. Pl.'s

Mot. Sanctions [97] at 3.)

### 3.   Plaintiff's Third Reason for Cancelling Mediation and Plaintiff's Proposed Sur-Reply.

In response, to defendants' arguments that plaintiff's second

explanation was again untrue, plaintiff's counsel once again has

changed his purported reason for cancellation, and seeks leave of

Court to file a Sur-Reply [105] in order to do so.   The Court **GRANTS**

plaintiff's motion and **ORDERS** the Clerk to make plaintiff's Sur-

Reply, [105] as well as defendants opposition [107], a part of the

record.[5]

Unsurprisingly, plaintiff's counsel's excuses have come full

circle, with the newest undermining the first.   Nearly three months

after first stating that plaintiff was "cajol[ed] [by] Plaintiff into

a costly non-binding  proceeding that would be out of the reach of

any evidentiary records" in order "to deplete the ability of

Plaintiff to pursue this action for copyright infringement," (Pl.'s

Mot. Set Aside ENE [77] at 2), counsel now argues that his client

"relied in good faith on Cynthia Arato's correspondence as to the

specifically enumerated Defendants . . . but *only* as to the

---

[5] Clearly, a party or attorney who has been caught in two lies should not normally be given an opportunity to fabricate a third excuse.   The Court permits the filing, however, as it illustrates further the need to impose sanctions on plaintiff.

17

*particular* Defendants listed in Cynthia Arato's [June 19th] correspondence." (Pl.'s Sur-Reply [105] at 3)(emphasis in original). Thus, a plaintiff who initially withdrew from ENE because it was too costly and non-binding, now asserts--without giving any logical reason why--that, while he was willing to enter into settlement negotiations, it was only on the basis that not all of the defendants would be a part of that negotiation process.[6] Considering that, in one pleading, plaintiff's counsel made a point of emphasizing the importance of Warner-Tamerlane to these proceedings, this newest explanation is particularly odd. (*See* Pl.'s Resp. Defs.' Cross-Motion [92] at 1, n.1)("Defendant Warner-Tamerlane Publishing Corp. administers the copyrights for the Infringing Work on behalf of, and is a subsidiary of parent Corporation, Warner Music Group Corporation. Warner Music Group Corporation is includes Warner/Chappell Music, one of the *world's largest music publishers*, with a catalog of more than one million copyrights worldwide.") (emphasis in original).

Regardless, the Court agrees with defendants that this final evolution of plaintiff's explanation for his counsel's actions in

---

[6] The joint motion for referral, however, does not include Warner-Tamerlane as a defendant in the list of defendants agreeing to ENE. Although obviously an inadvertent omission, one might argue that on the face of the pleadings, plaintiff did not agree to enter into settlement negotiations with Warner-Tamerlane, thereby rendering plaintiff's abrupt cancellation on this ground unnecessary.

AO 72A
(Rev.8/82)

cancelling the mediation is plainly insufficient as "it [Pl.'s Sur-Reply] makes the bald assertion but fails to show, by affidavit or otherwise, that Plaintiff agreed to ENE only because he did not believe Warner-Tamerlane would be participating in the ENE process." (Defs.' Resp. Pl.'s Sur-Reply [107] at 2.) *See* LR 7.1(A)(1), NDGa, ("[i]f allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law.") Indeed, at no point in these proceedings does plaintiff's counsel include an affidavit or declaration from his client that would support *any* of the assertions contained in these pleadings.[7]

Accordingly, the Court concludes that plaintiff knowingly agreed to undergo ENE and that the reasons offered by plaintiff's counsel are not only false, but that they insult the intelligence of this Court.

**C.   Plaintiff's Request to Set Aside Order and the Respective Parties' Request For Sanctions.**

This Court originally referred this matter to ENE as a result of the parties' joint motion.  However, as the record demonstrates, relations between the parties have greatly deteriorated.  Although that arguably might provide a good reason why the parties could benefit from ENE, the fact is that neither side currently has any

---

[7]   Given the ever-evolving and absurd explanations as to why the ENE was cancelled, perhaps plaintiff's counsel purposely chose not to file any supporting affidavits.

desire to participate in the ENE process.   (*See* Defs.' Opp'n Pl.'s Mot. Set Aside ENE [79])("defendants have little desire to participate in an ENE with an unwilling adversary . . . .") Accordingly, the Court hereby **GRANTS** Plaintiff's Motion to Set Aside Early Neutral Evaluation [77].

Concerning plaintiff's request for sanctions, as the record contradicts all of the assertions made by plaintiff's counsel, any request for sanctions made on such a basis are equally unsupportable. Consequently, the Court **DENIES** Plaintiff's Motion in Support of Sanctions [96].

Defendants also request that this Court award sanctions pursuant to LR 16.5, NDGa, which states that "[f]ailure to comply with the court's pretrial instructions may result in the imposition of sanctions, including dismissal of the case or entry of a default judgment," and LR 16.7(I)(1), NDGa, which states that the "[w]illful failure of a party to attend an ADR conference" might warrant the "imposition of sanctions." LR 16.7(I)(1), NDGa.  It is clear that not only did plaintiff violate this Court's Order to undergo ENE--and perhaps never had any true intention to participate in ENE--but plaintiff's counsel has been brazen in offering blatantly false reasons as to the cancellation.   Therefore, the Court **GRANTS** defendants' Cross-Motion for Sanctions [80] and **ORDERS** plaintiff to pay for defendants' costs in preparing for and setting up the ENE and

AO 72A
(Rev.8/82)

to reimburse defendants for the price of Ms. Arato's plane ticket. Additionally, the Court **ORDERS** plaintiff to fully reimburse defendants for the cost they have incurred in having to litigate these related motions.

Although plaintiff has objected to the imposition of sanctions, plaintiff has raised no objection to the proffered hourly rates of defendants' attorneys and staff, or the number of hours asserted by defendants as having been spent preparing for the ENE or responding to plaintiff's counsel's baseless allegations of misconduct. *See* Arato Decl. [79] at ¶¶ 15-18 and accompanying Exs. H-K. Consequently, the Court will use the rates and hours submitted by defendants.

Accordingly, plaintiff is hereby **ORDERED** to reimburse defendants for the cost of Ms. Arato's ticket in the amount of $711.20, and for defendants $8,436.80 in legal fees and costs in arranging and preparing for the ENE. Plaintiff is therefore **ORDERED** to remit to defendants $9,148.00.

## II. Defendant Cash Money Records, Inc.'s Request For Dismissal Due to Insufficient Service

### A. Background

Also before the Court is Defendant Cash Money Records, Inc.'s Motion to Dismiss Complaint [109] ("Def. CMR's Mot. Dismiss Compl.") for insufficient service of process, to which plaintiff has filed a

response [111] and defendant Cash Money Records has filed a reply [114]. Additionally, without even bothering to seek leave of Court to file a Sur-Reply, plaintiff has filed a further response [119] to defendant Cash Money Records' reply. As such, this pleading is improper on its face, and the Clerk is **ORDERED** to **STRIKE** plaintiff's attempted Sur-Reply [119] from the record.

Defendant Cash Money Records moves this Court to dismiss it from this action for insufficient service of process. Defendant contends that plaintiff has twice sought to serve it through various outside counsel: first via Edward R. Grauer on February 4, 2009 and then via Andrew H. Bart on March 3, 2009. On each occasion, the respective attorney informed plaintiff that the attorney was not authorized to accept service, and, accordingly, that Cash Money Records had not yet been served. (*See* Return of Service Executed Cash Money Records with attached correspondence from Edward R. Grauer [39]; Return of Service Executed Cash Money Records with attached correspondence from Andrew H. Bart [40].) Moreover, as to plaintiff's third attempt at service, on January 9, 2010, upon attorney Brad D. Rose, defendant contends that this service was untimely as being well beyond the 120-day deadline set by LR 4(m), NDGa, and without leave of court, and was also defective for reasons other than timeliness. Consequently, defendant requests that the Court dismiss it from this complaint on the ground that it has not been properly served within the time

22

allowed by law.

Plaintiff responds that, under both federal and Georgia law, he perfected service on February 4, 2009, when he served Edward R. Grauer.  Aware that his later, third attempt at service on January 9, 2010 undercuts his present position that the February 2009 service was valid, plaintiff explains that, in January 2010, he was merely mailing a subsequent pleading (the Third Amended Complaint) to defendant pursuant to LR 5(b)(2), NDGa.  Finally, plaintiff argues that because defendant has received actual notice of this complaint, any defects should be overlooked.

Indeed, defendant's motion to dismiss for insufficient service was premised on the assumption that plaintiff's third stab at service in 2010[8] was an implicit acknowledgment that the prior two attempts at service had been invalid.  This assumption is further strengthened by the fact that each Return of Service in 2009 was accompanied by a letter from the recipient explaining that he was not authorized to accept service, and, accordingly, that Cash Money Records had not yet been served.  *See* Return of Services [39 & 40].  Therefore, defendant's initial motion to dismiss focused entirely on the defects of plaintiff's most recent attempt at service upon Mr. Rose in

---

[8]   The summons was issued on December 28, 2009.  (*See* Summons [89]; Archer Decl. [109] at ¶ 3; Grauer Decl. [114] at ¶ 3.)   To reduce confusion, the Court will refer to this as the 2010 service, as the recipient received the summons in January 2010.

January 2010.

However, in his response, plaintiff states that the Rose service was merely a mailing of subsequent pleadings pursuant to LR 5(b)(2), NDGa, and not an effort to correct deficient service on defendant, through Grauer, February 2, 2009 via Mr. Grauer.   Plaintiff makes this assertion notwithstanding Grauer's letter indicating that he is "not an employee of Cash Money Records, nor am I an agent for service of process for Cash Money Records nor am I authorized to accept service on behalf of Cash Money Records." (Letter of Edward R. Grauer, attached to Return of Service [39].)

**B.    Sufficiency of Plaintiff's Purported Service of February 4, 2009**

Plaintiff has not filed the Return of Service issued in the name of Mr. Rose nor does he seek to rely on it as proof of service. Consequently, this Court need not rule on whether or not defendant's mailing of it constituted valid service.   Instead, plaintiff relies only on the service on Mr. Grauer.   The Court, however, agrees with defendant that the service on Grauer did not constitute sufficient service under either federal or Georgia law.

Under federal law, absent a specific authorization to receive service, service upon an attorney is rarely effective. *See Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094 (2nd Cir. 1990) ("service of process on an attorney not authorized to accept service

24

for his client is ineffective")(citation omitted).  Indeed, "[e]ven where an attorney exercises broad powers to represent a client in litigation, these powers of representation alone do not create a specific authority to receive service." *United States v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) *relying on Santos*, 902 F.2d at 1094 *and Schultz v. Schultz*, 436 F.2d 635, 639-40 (7th Cir. 1971)(holding that the general grant of authority to attorney is not enough to imply authority to receive process).  Ultimately, "the record must show that the attorney exercised authority beyond the attorney-client relationship, *including the power to accept service.*" (*Id.* at 640)(emphasis added).

The result under Georgia law is no different.  As stated in *Austin v. Austin*, 245 Ga. 487, (1980), a case relied upon by plaintiff, "service upon a party's attorney is valid only where the papers served are pleadings, motions, notices, etc., in the pending proceeding in which the attorney is employed." *Id.* at 489; *see also Walker v. Auto-Owners Ins. Co*, 261 Ga. App. 538 (2003)(holding that plaintiff's mailing of a complaint to an insurance company's lawyer was not proper service, for, despite plaintiff's previous lawsuit against the company, the complaint was the first filing in the underlying case).  Thus, while the Georgia Supreme Court allowed a deviation from the standard rule prohibiting service via counsel in *Austin*, plaintiff fails to note that the Court expressly limited its

25

holding to the facts of that case:

> The holding in this case is limited to the facts of this case, to wit: After a permanent alimony judgment was rendered, a former spouse filed a petition for modification in the court which had entered the alimony judgment. The other spouse filed an application for contempt for nonpayment of alimony with rule nisi attached authorizing service of the contempt application upon the attorney for the petitioner in the modification proceeding.   Service was made upon that attorney.

*Austin*, 245 Ga. at 489-90.

Furthermore, the other case that plaintiff relies upon for the proposition that service upon a party's attorney is proper under Georgia law, *Browning v. Europa Hair, Inc.*, 244 Ga. 222 (1979), is equally narrow. In *Browning*, the Georgia Supreme Court held: "where a foreign corporation files suit and obtains judgment in this state and institutes garnishment on that judgment in this state, process in a suit in equity to set aside that judgment . . . may be served upon the attorney for the foreign corporation who filed the first suit and the garnishment."   *Id.* at 224.   Plaintiff fails to offer any explanation as to why these two exceedingly narrow holdings should be applied to the present matter.

Plaintiff argues, however, that Grauer was more than attorney for defendant, but that instead, on December 12, 2008; he had put Cash Money's royalty payments on hold pending resolution of plaintiff's claim, thereby suggesting that he was a managing agent of defendant and an appropriate individual through which defendant could

26

be served. (Pl.'s Resp. Def.'s Mot. Dismiss Compl. [111]). Yet, in response to plaintiff's assertion, Grauer has sworn that he is not an employee, officer, director, or general or managing agent of defendant. (Grauer Decl. at ¶ 5, attached in support of Def. Cash Money Records' Reply [114].) Further, as to plaintiff's sole basis for proper service--that Grauer ordered defendant to cease royalty payments--Grauer has declared that he does not have the authority to decide whether or not defendant will withhold royalty payments in a matter and that, as a result, Grauer made no decision regarding defendant's royalty payments. (Grauer Decl. [114] at ¶¶ 3-4.) Although plaintiff cites to an email exchange as proof that Grauer withheld royalty payments, (*see* Email Exchange in App'x A to Pl.'s Resp. [114]), Grauer's declaration clearly demonstrates that he was merely a messenger informing plaintiff's representative of Cash Money's decisions regarding royalty payments. (Grauer Decl. [114] at ¶¶ 3-4.) There is no other evidence in the record to warrant a different conclusion. *See Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. Unit A 1981)("When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its

27

validity.")[9]   Regardless, even if Grauer had authority to withhold payments, the fact that he has not been authorized by appointment of law to accept service of process on behalf of defendant would demand that the Court reject plaintiff's argument.   *See Ziegler Bolt*, 111 F.3d 878, 881 (Fed. Cir. April 14, 1997); *see also Santos*, 902 F.2d 1092, 1094 (2nd Cir. 1990) (rejecting attempted service on counsel that examined plaintiff under oath on behalf of defendant before commencement of lawsuit).

Additionally, plaintiff was on notice that this attempt at service was deemed to be inadequate by the recipient and, accordingly, he subsequently attempted, twice again, to serve defendant: first on March 3, 2009, (Return of Service [40]), and again on January 9, 2010. (*See* Archer Decl. [109] at ¶ 3; Grauer Decl. [114] at ¶ 3; Summons [89].)   While the Court need not rule on whether or not plaintiff's attempted service upon Mr. Rose was adequate, the record is clear that plaintiff was attempting to serve defendant via Mr. Rose.   Plaintiff's present assertions, made without the benefit of any sworn declarations, that he was simply mailing pleadings pursuant to LR 5(b)(2), NDGa, is not credible.

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business of September 30, 1981.

AO 72A
(Rev.8/82)

Plaintiff does even not bother to offer an explanation in regard to his reasons for trying to serve Andrew Bart on March 3, 2009. If the January 2009 service on Grauer were believed to be sufficient by plaintiff, however, then there would have been no reason to try the second service in March.

Finally, plaintiff's suggestion that defendant's present awareness of this suit somehow relieves him of his duty to properly serve defendant is contrary to both Georgia and federal law. In Georgia, the fact that defendants "apparently received actual notice of this lawsuit 'does not obviate the need for proper service.'" *Igbinigie v. Wells Fargo Bank, N.A.*, 2008 WL 4862597, at *2 (M.D. Ga. 2008)(Land, J.) *citing KMM Indus., Inc. v. Prof'l Ass'n, Inc.*, 164 Ga. App. 475 (1982). Federal law, is no different: "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). Ultimately, due process demands that "before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant[,] . . . [t]here also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

29

### C.   Effect of Plaintiff's Failure to Serve Defendant

Plaintiff initiated this action on January 21, 2009.   (Compl. [1]).   Pursuant to LR 4(m), NDGa, service was due within 120 days after filing the complaint: by May 21, 2009.   If a plaintiff fails to properly serve a defendant within the time allowed by law, "the court--on motion or on its own, after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.   If the plaintiff shows good cause for the failure, however, the court must extend the time for service for an appropriate period."   FED. R. CIV. P. 4(m).

"Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.'" *Lepone-Dempsey*, 476 F.3d at 1281 (citation omitted).   However, "[e]ven in the absence of good cause, a district court has the discretion to extend the time for service of process." *Id.* (citation omitted). Finally, both the Supreme Court as well as this Circuit have held "that a defendant's pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." *Nelson v. Barden*, 145 Fed. Appx. 303, 311 n.10 (11th Cir. 2005) citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)(explaining that the Court "never [had] suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel,"

30

because "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law") and *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999)(holding that liberal construction of the pleading requirements for pro se litigants does not equate with liberal deadlines).

The Court concludes that there is no good cause for plaintiff's failure to timely serve Cash Money Records, particularly as plaintiff was twice put on notice of his failure to have done so.  Plaintiff's most recent attempt at service, on January 9, 2010, was well after the 120-days allowed by LR 4(m), NDGa, and was attempted without leave of Court.   Further, plaintiff having failed to file this attempted service or to defend it, the Court cannot consider it as effective service. *See Aetna Bus. Credit*, 635 F.2d at 435 (5th Cir. Jan. 27, 1981).

Finally, plaintiff's conduct in this litigation does not support the Court's use of its discretion to give plaintiff more time. Accordingly, the Court **GRANTS** Defendant Cash Money Records, Inc.'s Motion to Dismiss the Complaint [109].  Defendant Cash Money Records, Inc. is hereby **DISMISSED WITHOUT PREJUDICE** from this action.

**III. Defendant Young Money Publishing, Inc.'s Motion to Set Aside Entry of Default and Dismiss the Complaint.**

**A.   Background**

Another defendant, Young Money Publishing, Inc., has filed a

31

Motion to Set Aside Entry of Default and Dismiss the Complaint [113] ("Def. YMP Mot. Set Aside & Dismiss").   Plaintiff has filed a response [118] and defendant a reply [120].   On February 11, 2009, the Clerk entered a Default against defendant Young Money Publishing based on plaintiff's counsel's affidavit that defendant had been served on January 4, 2010, and had not yet filed an answer or responsive pleading within the time allowed by law.   (Johnson Decl. Supp. Default [104-2] at ¶¶ 2-3.)   Defendant contends that, because the referenced service was invalid, a default was improperly entered and should therefore be set aside.   In addition, defendant argues that, because the time for service has long since passed, the Court should dismiss defendant from this action.

In response, and in what has now become a familiar course of conduct by plaintiff, his counsel shifts and abandons his reliance on the service upon which he based his declaration in support of his request for entry of a default.   That is, counsel no longer contends that defendant was served on January 4, 2010, as he previously declared when he sought a default.   Instead he now relies on purported service on December 14, 2009 on the lead defendant, Dwayne M. Carter, Jr., via Mr. Carter's alleged secretary, Luz Martinez, in December 2009. (*See* Return of Service Executed on Dwayne Carter [85]; Pl.'s Resp. [118-1] at 2-3.)   Notwithstanding the fact that plaintiff seeks to uphold his Default Judgment on entirely different grounds from that on which it was gained, plaintiff's counsel has the

32

temerity to request that plaintiff be awarded the cost and fees for having to respond to defendant's motion.

For obvious reasons, defendant's motion to set aside default on dismiss focused entirely on the defects found in plaintiff's purported service of January 4, 2010, which was the service on which plaintiff based his motion for entry of default.[10]   Thus, in its motion, defendant argues that this 2010 service was untimely and was defective, as service was made by mail and was directed to a person who was not a managing agent of defendant or otherwise empowered to accept service.   (See Def. YMP Mot. Set Aside & Dismiss [113] at 4-12.)

In its Response [118], however, the plaintiff relied, not on the January 2010 service, but on service purportedly made on lead defendant Dwayne Carter on December 9, 2009.   (See Pl.'s Opp'n to Def. Young Money Publishing's Mot. to Dismiss the Compl. [118] at 3, citing to Docket No. 85.)

Accordingly, in its Reply [120], defendant contends that the default should clearly be set aside, as the plaintiff has now abandoned the basis on which he asserted that service had been made and on which he therefore obtained entry of default. (Reply Mem. of Law in Support of Def. Young Money Publishing, Inc.'s Mot. to Set

---

[10]   See Request for Entry of Default [104] Johnson Decl. Supp. Default at ¶¶ 2-3 requesting an entry of Default based on the fact that "service of process was had on defendant, YOUNG MONEY PUBLISHING, INC., on January 4, 2010. See also Return of Service Executed on Young money Publishing [103]).

33

Aside The Entry of Default and Dismiss the Compl. [120] at 2-3).
"When service of process is challenged, the party on whose behalf it
is made must bear the burden of establishing its validity." *Aetna
Bus. Credit v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434,
435 (5th Cir. 1981). Plaintiff having made no attempt to defend the
purported service of January 4, 2010, the Default Judgment upon which
it is based, necessarily cannot stand.[11] The Court therefore **GRANTS**
defendant's motion to set aside entry of default [113-1].

Further, in supporting his motion to dismiss for untimely and
insufficient service [113-2], defendant also responds to plaintiff's
new purported basis for arguing that defendant had been served: to
wit, the purported service of a summons directed to defendant Dwayne
Carter in December 2009. *Id.* at 3-10. Given this reversal by
plaintiff, the Court also focuses now only on the service purportedly
made in December on 2009 on which the plaintiff currently relies.

**B.    Plaintiff's Purported Service on Young Money Publishing by
Serving Defendant Carter**

Focusing on the sufficiency of plaintiff's service on defendant

---

[11]   While the Court need not rule on the validity of plaintiff's
January 4, 2010 service, the Court is distressed by the fact that
plaintiff's attempt at service was via certified mail. This Court
has already told plaintiff that certified mail does not satisfy the
requirements of FED. R. CIV. P. 4. *See* Order of October 6 ,2009 [72].
That is, absent a waiver, neither Georgia, where this action is
pending, nor Florida, where service was attempted, allows for service
via certified mail. *See* Fla. R. Civ. P. 1.070(b); *see also Camp v.
Coweta County*, 280 Ga. 199, 201 n.2 (11th Cir. 2006)("Mailing a copy
of [the] petition or [the] complaint does not constitute service of
process.") Additionally, the Court issued the above Order a month
after plaintiff's present counsel filed his entry of appearance.

34

Young Money Publishing based on the December 9, 2009 summons, the Court first notes that the December 9th Summons was directed to, and issued for, only lead defendant Dwayne Carter, not Young Money, and is thus invalid on its face as to the latter. *See* Return of Service on Dwayne Carter [85] addressing the Summons to Dwayne M. Carter, Jr. p/k/a LIL WAYNE. Rule 4(a)(1)(B) and (b) require that a summons be "directed to" and "issued for each defendant to be served." FED. R. CIV. P. 4(a)(1)(A) and (b).

Further, the fact that plaintiff's counsel sought a separate summons for Young Money Publishing and for Carter demonstrates that counsel is well aware of the need for a Summons for each defendant. *See* Summons Issued as to Dwayne Carter [34] and Summons Issued as to Young Money Publishing, Inc. [88]. Thus, the December 9th Summons issued for defendant Dwayne M. Carter, Jr. could not properly be served on defendant Young Money Publishing.

Of course, plaintiff likely knew this and never intended for the December 2009 purported service on Carter to count as service on Young Money. Yet, as has become a predictable response by plaintiff's counsel, whenever he is stymied on one ground, he pivots and tries to find something else in the record to justify whatever actions of his have been challenged. Here, the best he could come up with was saying that service of a summons issued to Dwayne Carter was sufficient to constitute service on defendant Young Money. Accordingly, on this ground, alone, service on the latter was

35

insufficient.

Finally, the Court must once again reject plaintiff's arguments that actual notice of a lawsuit somehow relieves a plaintiff of their requirements to properly serve a complaint. *See Murphy Bros.*, 526 U.S. at 347; *Omni Capital*, 484 U.S. at 104.

### C.   Effect of Failure to Serve Young Money Publishing

This Court incorporates by reference the previous discussion, found in the section of this Order regarding defendant Cash Money Records, regarding a plaintiff's obligation to timely serve a defendant and the consequences for failing to do so.

The Court further notes that it is troubled by the actions of plaintiff's counsel.  That is, having been previously warned that service by mail does not satisfy the requirements of proper service, counsel nonetheless sought and obtained a Default Judgment based on service by mail.  Then, when called on to defend his Default, counsel abandons the service used to obtain the Default, and instead seeks to rely upon a Summons issued to another defendant altogether. Thereafter, when confronted by what he has to know is a meritorious motion to vacate the default by defendant, counsel has the nerve to ask this Court to award him attorney's fees and costs as his result of his having to respond to that motion.  The Court has grave concerns as to whether counsel grasps the seriousness of his conduct or of his obligations as an officer of this Court.

At any rate, as the time for service has long since passed and

36

finding no good reason to exercise its discretion to allow plaintiff additional time to serve this defendant, the Court **GRANTS** Defendant Young Money Publishing, Inc.'s Motion to Set Aside Entry of Default and Dismiss the Complaint [113], and hereby **ORDERS** that Young Money Publishing, Inc. be **DISMISSED WITHOUT PREJUDICE** from this action. The Court, of course, **DENIES** plaintiff's request for an award of costs and attorney fees.

IV.   **Plaintiff's Request for Entry of Default Judgment Against Three Nails and a Crown, LLC.**

Also before the Court is Plaintiff's Request for Entry of Default Judgment Against Three Nails and a Crown, LLC [116] ("Pl.'s Req. Default"). As discussed *infra* in Section V(C), defendant Three Nails and a Crown avers that it has not yet been served, notwithstanding plaintiff's argument that defendant is currently in default.

The Court need not address this issue, however, as Three Nails and a Crown's Answer, filed the same day as plaintiff's request for a Default, renders this issue moot. (*See* Answer of Defendant Three Nails and a Crown Publishing, LLC [115].)   It is well settled that "defaults are seen with disfavor because of the strong policy of determining cases on their merits." *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).   Even had TNC not filed an Answer, the Court would still deny plaintiff's request because counsel's declaration in support of default is deficient on

37

its face, as it fails to state the date that defendant was purportedly served.

Accordingly, the Court **DENIES** Plaintiff's Request for Entry of Default Judgment Against Three Nails and a Crown, LLC [116].

## V.   Plaintiff's Request for Leave to File a Third Amended Complaint

Also before the Court is Plaintiff's (Amended) Motion for Leave to File Third Amended Complaint [101] ("Pl.'s Mot. File 3d Am. Compl.") to which defendants have filed a response [106], and plaintiff a Reply [112].[12]

After twenty-one days following the filing of a responsive pleading, a party may amend its pleadings only upon the consent of the opposing party or by leave of court, which should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). However, a court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)(citation omitted).

---

[12]   As its name suggests, this is technically the second time that plaintiff has requested leave to file a third amended complaint. Because the substance of the original request to file the third amended complaint [99] is essentially the same as the amended motion, any reference to the amended motion is equally applicable to the original.

After conferring with defendants and learning that they objected, plaintiff seeks leave of Court to file a Third Amended Complaint. In this Third Amended Complaint, plaintiff seeks to replead his claim under the Lanham Act; add two new "causes of actions;"[13] and add new factual information that he has allegedly learned since filing the original Complaint on January 21, 2009.

In response, defendants argue that the Court should deny plaintiff's motion. Defendants contend that plaintiff's attempt to reallege his Lanham Act claim, as well as plaintiff's new accounting and punitive damage claims, are futile. Further, defendants note that the "new" parties that plaintiff wishes to add--Tightwerks, LLC and Three Nails and a Crown, LLC--are, in fact, previous parties to this complaint, and plaintiff's failure to timely serve them earlier warrants their dismissal from this suit. Additionally, defendants argue that plaintiff's new factual allegations--many of which refer to plaintiff's theory of defendant Carter's "access" to plaintiff's copyrighted work--should be denied on the basis that plaintiff unduly delayed in asking them. As to the remaining new factual allegations, defendants contend that, because they are vague and immaterial, it would be unduly burdensome to have to answer them. Finally, if this Court does allow these new allegations to be added to the complaint,

---

[13]   Plaintiff now requests an accounting and seeks punitive damages. Additionally, plaintiff has filed a Motion for Extension of Time to File Reply in Support of Motion for Leave to File Third Amended Complaint [110], which the Court hereby **GRANTS**.

defendants renew their previous request to conduct phased discovery [52].  Plaintiff has not objected.[14]

### A.   Plaintiff's Lanham Act Claim

Plaintiff seeks to amend his Complaint to add back in a Lanham Act claim.   Plaintiff alleges that "Defendants' exploitation of the Infringing Work, has, and will continue to cause confusion, mistake or deception," (3d Am. Compl. [101] at ¶ 60), as to "the origin of" defendants infringing work, (3d Am. Compl. [101] at ¶ 60), and constitutes a violation of Section 43(a) of the Lanham Act, or 15 U.S.C. § 1125(a)(1)(A).   Plaintiff alleges that this conduct is particularly damaging in light of "Defendants' purposeful exclusion of the accurate designation of source and producer credits on the Defendants' Infringing Album." (3d Am. Compl. [101] at ¶ 61.)

Defendants contend that any amendment to add this claim would be futile, as plaintiff states no claim for a Lanham Act violation on his alleged facts.   Defendants make a very abbreviated, two-page argument on this point, relying primarily on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).   While defendants, in a conclusory fashion, set out the law, they do not explain with any clarity how that law applies to the facts in this case.   The Court suspects that defendants are correct in their

---

[14] At the time of the filing of the original motion, defendant Warner-Tamerlane had not yet filed an answer to the complaint, and thus did not join in that motion.   However, Warner-Tamerlane now joins with the other defendants in making this request.

AO 72A
(Rev.8/82)

conclusion that the Lanham Act does not apply, but it would be burdensome and risky for the Court to try to fill in the blanks for the defendants as to just why that is so. Accordingly, the Court **GRANTS** plaintiff's motion to amend its Complaint to add a Lanham Act claim.

As the Court will be granting the defendants' request to stage discovery, there will be no discovery concerning a Lanham Act violation in the first stage of discovery. Should the case proceed beyond this first stage of discovery, defendants can revisit the applicability of a Lanham Act claim in a subsequent motion for summary judgment.

**B.    Plaintiff's Accounting Claim and Punitive Damages Claim**

Defendants contend that plaintiff's claim for an "Accounting" by defendants due to defendants' alleged violations of federal, state, and common law is not warranted in a claim brought pursuant to the Copyright Act. Likewise, defendants contends that plaintiff's claim for punitive damages is also not permitted. Therefore, defendants argue, the amendment to add these claims is futile.

Again, defendants appear to be correct on this point, at least as to any claims brought pursuant to the Copyright Act. Yet, the Court has permitted the Lanham Act to go forward, for the time being. Defendants do not make an argument as to the appropriateness of a claim for an accounting and for punitive damages with regard to the latter claim. Finally, plaintiff will have to hurdle two obstacles

41

in discovery before proceeding to discovery on damages.   Should plaintiff succeed, the Court will permit the defendants to renew any motions on damages to allow for discovery that is focused on only those aspects of damages that are recoverable. Therefore, the Court **GRANTS** plaintiff's motion to amend his Complaint to add claims for an accounting and for punitive damages.

### C.   Plaintiff's Request to Add Tightwerk Music, LLC and Three Nails and a Crown, LLC

Plaintiff filed his motion to file a Third Amended Complaint on January 29, 2010 [99]. In this amendment, he seeks to add two additional defendants: Tightwerk Music, LLC and Three Nails and a Crown, LLC ("TNC"). However, these two entities are no strangers to this litigation, as they were specifically named as parties in plaintiff's original complaint [1], filed on January 21, 2009, as well as plaintiff's previous two amended complaints, the last being filed on March 2, 2009. *See* Compl. [1] at ¶¶ 12-13; Am. Compl. [6] at ¶¶ 12-13; and 2d Am. Compl. [18], incorporating ¶¶ 10-50 of Am. Compl. by reference.

On December 14, 2009, nearly a year after filing his complaint, plaintiff submitted an Unopposed Motion to Amend Complaint to Correct Names in Caption [82].   The court granted plaintiff's motion three days later on the December 17. (*See* Order [86-2].)   The resulting complaint therefore omitted any reference to either Tightwerk or TNC in the complaint's caption.

It is not clear what purpose the plaintiff sought to advance by this amendment or whether his omission of these two defendants was intentional or inadvertent.   Defendants suggest that he may have tried to drop these defendants because he had failed to serve them. Further, two months after dropping these defendants' names from the caption,  plaintiff then sought to "add" them back into this action, through the present motion.

Defendants filed a response on February 16, 2010, arguing that because plaintiff has failed to show "good cause" for his failure to serve these two defendants within the initial 120-day deadline provided by Rule 4(m), or to even ask leave of court to do so once that time elapsed, plaintiff should not now be permitted to rejoin these parties. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Leave to File 3d Am. Compl. [106] at 16-18).   Thus, to the extent that plaintiff's amended complaint seeks to rejoin Tightwerks or TNC, defendants object.

In its Reply, however, Plaintiff indicates that defendant Three Nails and A Crown were served, because it, along with three other defendants, sought an extension of time in which to answer the Amended Complaint on February 25, 2009.   *(See* Pl.'s Mot. in Supp. Of Mot. For Order Granting leave to File 3d Am. Compl. [112] at 7-9  and Pl.'s Req. for Entry of Default Against Three Nails and A Crown, LLC [116].)  Of course, subsequently plaintiff filed a motion for default against Three Nails, which this Court has denied *supra.*   Likewise,

43

defendant Three Nails' position that it was not served seems to have

been undermined through its Answer [115], in which  it states that:

> it has no obligation to file this pleading...in that the
> operative Amended Complaint...does not name three Nails as
> a Defendant, and Plaintiff previously failed to properly
> serve Three Nails with process.  Nevertheless, Three Nails
> reached a compromise with Plaintiff yesterday pursuant to
> which it agreed to appear in this action and to file an
> Answer by April 1, 2010.  Plaintiff, however, reneged on
> this agreement this afternoon and threatened to file a
> default against Three Nails.  Three Nails, accordingly,
> submits this Answer without prejudice to its position that
> no Answer is required....

(Answer of Defendant Three Nails [115] at 1-2).

Accordingly, while defendant Three Nails has asserted that it

was not properly served, it has offered no evidence in support of

that assertion and it has chosen to answer the Complaint, even though

its name is not in the caption of the current operative complaint.

Plaintiff does not respond in its Reply [112] to defendant

Tighwerk Music's contention that it was never properly served.

Defendant Tightwerk never offers anything but an assertion that it

has not been served.  Nor has Tightwerk yet filed a motion to dismiss

for failure to serve process.[15]  Thus, the service issue is too murky

a basis for the Court to deny plaintiff's motion to amend to add

Tighwerk back into the action.

There is another more technical reason to question whether

Tightwerk was ever removed from the action, notwithstanding

---

[15]  Probably, Tightwerk has not filed a motion because it has
concluded that it is no longer a defendant, as its name was removed
from the caption.

plaintiff's successful motion to remove its name from the caption. Specifically, there is Eleventh Circuit case law to the effect that "[A]lthough captions provide helpful guidance to the court, they are not determinative as to the parties to the action or the court's jurisdiction." *Lundgren v. McDaniel*, 814 F.2d 600, 604 n. 2 (11th Cir. 1987). *Accord Welch v. Laney*, 57 F.3d 1004, 1010 (11th Cir. 1995) citing *Lundgren* for the proposition that captions are not determinative as to who the parties in an action are.

Admittedly, *Lundgren* and *Welch* were addressing questions as to the capacity in which an undisputed party defendant was being sued; that is, whether the defendant was being sued in his official capacity or as an employer, respectively.  Thus, these cases provide only *dictum* on the question whether the removal of a defendant's name from a caption has the effect of removing that individual or entity as a defendant when that individual/entity is still listed as a party in the body of the complaint, as occurred here.  Specifically, the body of plaintiff's second amended complaint remained unchanged—that is, both entities were still listed as parties.  *See* 2d Am. Compl. [18] incorporating ¶¶ 10-50 of Am. Compl. by reference; *see also* Am. Compl. [6] at ¶¶ 12-13 naming Tightwerk and TNC as parties to this action.

The Court does not give plaintiff credit for being aware of this technical argument, as plaintiff never advances the argument. Indeed, with its latest amendment, plaintiff purports to be adding

45

back in parties who were dismissed before. Nevertheless, given the confusion in the existing record as to whether Tightwerk was served and the uncertainty as to whether its removal from the caption removed it as a defendant, the Court **GRANTS** plaintiff's motion to amend his complaint to add both defendants Three Nails and Tightwerk back as defendants, to the extent that they ever left us in this litigation.

Assuming that these two defendants have not been properly served, on the peculiar facts concerning these two defendants, the Court has discretion "[e]ven in the absence of good cause," to extend the time for service of process. *Lepone-Dempsey v. Carroll Cnty Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)(citation omitted). Consequently, the Court will allow plaintiff, by the time set out *infra* at 51-52, to <u>properly</u> serve these defendants, if they were not in fact properly served, and to provide the Court with documentation of the same.

### D.   **Plaintiff's New Factual Allegations Regarding Defendants' "Access" and Defendants' Request for Phased Discovery**

Defendants also object to plaintiff's attempt to add new factual allegations to support his theory that defendants had "access" to plaintiff's copyrighted work. (*See* 3d Am. Compl. [101] at ¶¶ 28-29, 32, 34.)

"The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Cresswell v. Sullivan &*

46

*Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)(citation omitted). Consequently, plaintiff's assertion, made without the benefit of any supporting facts that "the [third] amended complaint . . . includes [] additional factual allegations that Plaintiff has learned since the filing of its *original* Complaint," is in violation of LR 7.1(A)(1), NDGa, and is arguably insufficient on its face. *See* Pl.'s Mot. File 3d Am. Compl. [101] at 2 (emphasis added).   While plaintiff's original complaint was filed on January 21, 2009, plaintiff has filed two amended complaints since that date, the last on March 2, 2009.   Thus, the additional factual information could likely have been discovered by plaintiff before filing his second amended complaint.   Indeed, one of the new allegations involves actions that occurred in 2007, well before plaintiff even initiated his lawsuit.   (*See* 3d Am. Compl. [101] at ¶ 28.)

Finally, given that plaintiff is well aware of the tenuous nature of his "access" claim via defendants' motion for judgment on the pleadings [29], filed prior to the parties' failed mediation, plaintiff's failure to offer any explanation as to why the interest of justice would require leave is particularly unhelpful to the Court. *See Andrx Pharmas., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236-37 (11th Cir. 2005) (citing the fact that plaintiff amended its complaint in response to defendants motion for judgment on the pleadings and plaintiff's failure to adequately explain why the interest of justice would require leave to amend as reasons in

47

affirming district court's denial of motion to amend).

Therefore, while it is highly questionable whether plaintiff has met his burden, the decision of whether or not to allow an amendment is still in the discretion of the Court. Given the fact that discovery has not yet begun and that plaintiff's new allegations do not raise any new legal issues, the Court concludes that any prejudice towards defendants will be minimal. Accordingly, the Court **GRANTS** plaintiff's motion with respect to plaintiff's new factual allegations regarding access.

Lastly, in their response, defendants revive their previous motion for phased discovery [52] and go to great lengths to stress its appropriateness in this action. (*See* Defs.' Resp. Pl.'s Mot. File 3d Am. Compl. at 20-21.) Accordingly, as plaintiff does not respond to defendants' arguments, and for good cause being shown, the Court will permit defendants' unopposed request.

### F.  Defendants' Allegation of Vague and Immaterial Factual Allegations

Finally, defendants contend that Paragraphs 7, 9, 25, and 31 of plaintiff's third amended complaint are vague and immaterial, and it would amount to an "undue burden" to force them to have to respond to the allegations contained therein. The Court does not agree. If defendants wish not to have to answer the allegations contained in these paragraphs on the grounds that they are vague and immaterial, a motion under Rule 12(f) would have been the apt vehicle. However, when making such a motion, defendants should always bear in mind:

48

> If they [the allegations] are immaterial they simply do not matter, and the court need not be at pains to blot them away. Striking material from pleadings is permissive with, not mandatory for, the court. After all, it is the present policy of the trial courts of the United States not to root up cockle in the perilous time of sprouting, but rather to leave its elimination to the harvest season when, without loss or harm, it may be discarded and the good grain preserved as the substance of judgment.

*Gas Consumers Ass'n v. Philadelphia Gas Works Co.*, 12 F.R.D. 125, 127 (E.D. Pa. 1951). Accordingly, even had the motion been made pursuant to Rule 12(f), the Court would have denied it. Therefore, the Court **GRANTS** plaintiff's motion with respect to the above-mentioned paragraphs. In short, the Court **GRANTS** plaintiff's Amended Motion to File Third Amended Complaint [101].

## VI.  Remaining Service Issues As Well As Defendants' Request for Status Conference

Not including defendant Tightwerk Music, LLC, it appears that the following defendants have also not been served: Bobby M. Wilson p/k/a Bobby Valentino, amended to Bobby Marcel Wilson p/k/a Bobby Valentino;[16] Curtis Stewart p/k/a/ Kidd Kidd; and Ultra Tunes a/c Reallionaire Music, amended to Ultra International Music Publishing, LLC d/b/a Ultra Tunes, LLC. Consequently, the plaintiff shall serve these and any other remaining defendants against whom plaintiff

---

[16] Plaintiff's proof of service on Mr. Wilson is insufficient as the Court cannot confirm from plaintiff's proffer that either GreenbergTraurig, LLP or Jess Rosden are authorized to accept service on behalf of Mr. Wilson. (*See* Return of Service Executed Bobby M. Wilson [50].)  Moreover, as made clear in the letter from Mark G. Trigg from GreenbergTraurig, attached in support of Plaintiff's Notice of Evasion of Service [57], neither GreenbergTraurig, LLP nor Jess Rosden serve as the registered agent for Mr. Wilson.

49

wishes to proceed by the deadline set out *infra* at 52.   Failure to serve these defendants by the above deadline will likely result in the dismissal of plaintiff's claims against them.

Plaintiff purports to have served the lead defendant, Dwayne Carter, on December 14, 2009.   As discussed *supra*, it is unclear whether defendant Carter considers himself to have been served, as he has filed no answer.   Indeed, newspaper reports indicate that Carter, also known as Li'l Wayne, is now serving a sentence in a New York state prison on weapons charges.   Accordingly, Ms. Arato and Mr. Archer, counsel for the corporate entities that have produced Carter's recording, shall promptly advise counsel for plaintiff where Carter is presently residing and shall use their good offices to make Carter available for service of summons.

The Court hereby **APPROVES** of the stipulated dismissal without prejudice between plaintiff and defendant ASCAP.[17]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Cancel (Set aside) Order for Early Neutral Evaluation and Notice of Intent to File First Amended Complaint [77]; **GRANTS** Defendants' Cross-Motion for Sanctions [80]; **DENIES** Plaintiff's Motion in Support

---

[17]   Plaintiff's inclusion of BMI as a defendant in the third amended complaint is perplexing, (3d Am. Compl. [101] at ¶ 19), as defendant dismissed BMI with prejudice almost a year ago on February 17, 2009. (Notice of Dismissal With Prejudice Against Defendant Broadcast Music, Inc. [11].)   The Court therefore **STRIKES** BMI as a defendant.

AO 72A
(Rev.8/82)

of Sanctions [96]; **GRANTS** Plaintiff's Motion for Leave to File Third

Amended Complaint [99]; **GRANTS** Plaintiff's (Amended) Motion for Leave

to File Third Amended Complaint [101]; **GRANTS** Plaintiff's Motion for

Leave to File Sur-Reply in Further Support of Plaintiff's Motion for

Sanctions [105]; **DENIES** Defendants' Motion for Status Conference

[108]; **GRANTS** Defendant Cash Money Records, Inc.'s Motion to Dismiss

the Complaint [109]; **GRANTS** Plaintiff's Motion for Extension of Time

to File Reply in Support of Motion for Leave to File Third Amended

Complaint [110]; **GRANTS** Defendant Young Money Publishing, Inc.'s

Motion to Set Aside Entry of Default and Dismiss the Complaint [113];

and **DENIES** Plaintiff's Request for Entry of Default Against Three

Nails and a Crown [116].

The Clerk is directed to **STRIKE** plaintiff's attempted Sur-Reply

[119] from the record.

The Court has granted the Royalty Network defendants' Cross-

Motion for Sanctions [80].   Accordingly, plaintiff is ORDERED to

remit **$9,148** to these defendants **within thirty (30) days** from the

date of this Order; that is, by **October 27, 2010.**

The Court has granted defendants' request for phased discovery.

The plaintiff shall serve any remaining defendants who have not yet

been served, or who have notified plaintiff that they have been

improperly served,[18] and shall provide the Court with proof of that

---

[18]   Because the Court has granted defendant Cash Money Records'
motion to dismiss and defendant Young Money Publishing's motion to

service, by **October 25, 2010**.[19]

Plaintiff shall file, by **October 29, 2010,** a notice to the Court and all parties, indicating which parties plaintiff has served and which parties he has not served.   Any parties who have not been served will be dismissed by the Court.

All defendants, both those previously served and those newly served, shall serve an answer to plaintiffs' Third Amended Complaint by **November 8, 2010.**

Plaintiff and those parties who have been served, previously or by the above October 25, 2010 deadline, shall file a joint preliminary report and discovery plan concerning the first phase of discovery by **November 15, 2010**.   Discovery shall begin as to the first phase of discovery, *see infra*, on **November 22, 2010** and conclude by **January 10, 2011**. Motions for summary judgment shall be filed by **February 4, 2011**.

The first phase of discovery shall focus on the question whether similarities exist between plaintiff's song and the defendants'

---

dismiss, the latter are dismissed from this action without prejudice. Nevertheless, plaintiff will not be permitted to re-serve these defendants in this action, else there would be no purpose to the dismissal.   Instead, if plaintiff wishes to proceed against these defendants, he will have to file a new law suit against them and will be subject to any statute of limitations or damage preclusion defenses that may follow from his belated filing of a claim against them.

[19]   Ms. Arato and Mr. Archer should note the previous directive to them, *supra*, re working with plaintiff's counsel to make defendant Carter available for service of summons.

allegedly infringing song.   Only if plaintiff survives a summary judgment on this question will discovery proceed on the questions of defendants' access to plaintiff's song, on defendants' explanation that they independently created the allegedly infringing song, and on damages.

Plaintiff is advised that any future non-compliance with the federal or local rules or with this Court's orders, or any further submissions that contain false or misleading information or argument, may result in dismissal of this action.

Finally, the action was administratively terminated for the limited period of time that was to be involved in the mediation, and was to be administratively reopened at the conclusion of that proceeding.   As the plaintiff had cancelled this mediation on or before November 6, 2010 and as the Court is not directing any further mediation, the Clerk shall show this action as having been administratively reopened, effective **November 6, 2009**.

SO ORDERED, this 26 day of September , 2010.

JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

53