IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRCICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 18 2011

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

| | |
|---|---|
| **MICHAEL BRADFORD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| **DWAYNE MICHAEL CARTER, JR.** | ) 1:09-ccv-00156-JEC |
| et al., | ) |
| | ) |
| Defendant(s) | ) |
| | ) |

## PLAINTIFF'S EXPERT DISCLOSURE

Plaintiff discloses the following individual who may be used at trial to present expert witness testimony in this case:

Felicia M. Miyakawa, Ph.D.
Associate Professor of Musicology
Assistant Director, School of Music
Middle Tennessee State University
1301 East Main Street
MTSU Box 0047
Murfreesboro, TN 37132
(615) 904-8043

Plaintiff attaches a report prepared and signed by Dr. Miyakawa on January 27, 2011, which report contains the statement of opinion Dr. Miyakawa intends to

1

express if called at trial, the basis therefore and all other information required by Federal Rules of Civil Procedure 26(a)(2)(B).

Plaintiff reserves the right to supplement the report of his expert to account for newly discovered or newly produced evidence; (2) solicit expert opinion from any expert designated by Defendants; and/or (3) solicit expert opinion from any fact witness(es) properly qualified. Plaintiff further reserves the right to object to the testimony of any expert witness presented by Defendants, or to the information contained in any report of such expert(s). Plaintiff also reserves the right to disclose any expert witnesses on economic issues pending the outcome of Defendants' Emergency Motion to Dismiss (Doc. No. 153).

DATED: February 17, 2011                    Respectfully submitted,

                                            /s/ Michael Bradbury
                                            Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via facsimile and via ordinary U.S. Mail with a copy on compact disc upon the following:

| Counsel | On behalf of: |
|---|---|
| T. Joshua R. Archer, Esq.<br>M. Anne Kaufold-Wiggins, Esq.<br>**BALCH & BINGHAM LLP**<br>30 Ivan Allen Jr. Blvd. N.W., Suite 700<br>Atlanta, GA 30308<br>Telephone: (404) 261-6020<br>Facsimile: (404) 261-3656<br><br>Cynthia S. Arato, Esq.<br>**MACHT, SHAPIRO, ARATO & ISSERLES LLP**<br>The Grace Building<br>1114 Avenue of the Americas, 45th Floor<br>New York, NY 10036<br>Telephone: (212) 479-6727<br>Facsimile: (212) 202-6417 | *Universal Motown Republic Records Group, a Division of UMG Recordings, Inc., Rondor Music International, Inc., The Royalty Network Inc., Warner- Tamerlane Publishing Corp., Darius J. Harrison, p/k/a Deezle, Dwayne Michael Carter, Jr., p/k/a Lil Wayne, and Three Nails and a Crown Publishing (named as "Three Nails and a Crown LLC")* |

this 17th day of February 2011.

*/s/ Michael Bradford*
Michael Bradford

## CERTIFICATE OF PLAINTIFF REGARDING FONT SIZE

Plaintiff certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This 17th day of February 2011.

*Michael Bradford*
Michael Bradford
Plaintiff

**Felicia M. Miyakawa, Ph.D.**
Associate Professor of Musicology,
Assistant Director, School of Music
Middle Tennessee State University

Case No. 1:09-CV-00156- (JEC)
Michael Bradford
Vs.
Dwayne Carter

# Musicologist Report
27 January 2011

818 Leaf Ave.
Murfreesboro, TN 37130
615.904.8043 (o)
615.542.2310 (c)
FMMiyakawa@gmail.com

Case No. 1:09-CV-00156- (JEC)
Michael Bradford
Vs.
Dwayne Carter

Musicological Report prepared by
**Felicia M. Miyakawa, Ph.D.**
27 January 2011

## QUALIFICATIONS

I am Assistant Director of the School of Music and Associate Professor of Musicology at Middle Tennessee State University, where I have taught since Fall 2004. In this capacity I teach a variety of Music History courses, including several courses in Popular Music studies. Pertinent to the case at hand is one of my signature courses, Hip-hop Music and Culture, which I have taught five times at my present institution. My Hip-hop course draws substantially on my own hip-hop / rap music research, the breadth of which is outlined in my *curriculum vitae*, which I have already supplied to the court. Of special interest to this case are my publications that deal with how rap music can effectively be mapped (another name for notation), analyzed, and understood within its own aesthetic framework. I will discuss these ideas at greater length below as they relate to the case of Michael Bradford vs. Dwayne Carter.

I hold a Ph.D. in Musicology from Indiana University (Bloomington), a program renowned for its intellectual rigor and high academic standards. (See, for example: http://info.music.indiana.edu/web/page/normal/15780.html). My teaching and scholarship draw not only from the standard methodology I learned in Indiana's Musicology program, but also from courses and research experiences in Ethnomusicology and African-American studies. My specialization is American Popular music, with emphasis on African-American traditions, such as Rap. I am frequently invited to share my expertise at academic conferences and at other colleges and universities, and have been interviewed as a guest expert for various radio programs, such as WNYC's *Soundcheck*. I am an active member of the American Musicological Society and the Society for American Music. In short, I am a professional Musicologist with sufficient disciplinary training, scholarly acumen, and professional reputation to serve as an expert witness in this legal case.

E. B. A. Executives, Inc., on behalf of the plaintiff, Michael Bradford (a.k.a., "Mail Boi"), has asked me to review Michael Bradford's "Crush" (2005) and Lil' Wayne's "Mrs. Officer" (2008) and to produce a report on any substantial similarity I might find between the two songs. I have also reviewed a preliminary report prepared by Dr. Gregory A. McPherson for the plaintiff and will build on Dr. McPherson's analysis in my own report. Below I will first describe my own analytical methodology, which I will then apply to the two songs in question. At the end of this report I will offer concrete conclusions about the issue of substantial similarity between these two songs.

2

sounds drop out and only vocals are heard), or ruptures may be barely noticeable (such as brief breaks in an otherwise continuous drum pattern). Ruptures provide moments of interest to a song's "story," often punctuating important moments in the narrative as it unfolds.

My analysis for this case will engage these concepts—and especially layering, groove, and rupture—to illustrate substantial similarity.

***Assumption 2***: Because rap music works differently from "art" music (and even most popular music), standard notation—developed in order to fix on paper those elements most central to "art" music, such as melody and harmony—does not sufficiently represent elements that are central to rap's distinct sounds. For this reason, I developed my own style of notation, called a groove continuum, in order to specifically highlight patterns of repetition (groove) and rupture (breaks in repeated patterns).[4] Some standard notation is used when constructing a groove continuum, but more attention is given to how a song is built through layering and rupture. With this assumption in mind, I have constructed a groove continuum analysis for each song. These documents are attached to the present report.

My analysis will also draw on the work of Dr. J. Peter Burkholder, who has published extensively on the subject of Musical Borrowing, the study of how a single work may or may not be indebted to another. Burkholder has constructed an umbrella-like methodology that serves questions of copyright infringement well. Indeed, his writings on this subject are already informing scholarship about musical borrowing and copyright law.[5] One of the central issues he addresses is the issue of access. As is true in both the legal and musicological world, "The case for borrowing is stronger when it can be proved that the composer knew or had access to the existing piece."[6] Since the plaintiff's lawyer will establish access in this case, I will not attend to Burkholder's methodology for establishing access. More pertinent to this report is the Typology of Musical Borrowing that Burkholder has established to evaluate potential cases of borrowing; or, in legal terms, a methodology to establish substantial similarity.

Burkholder's typology of musical borrowing,[7] which is broad enough to be applicable to a variety of musical styles, is built around the following questions:
1. "What is the relationship of the existing piece to the new piece that borrows from it?" Here he compares in particular questions of type (genre, medium, style, or musical tradition), texture (the number of voices or layers "borrowed" from the

---

[4] For additional examples of new notation systems created by music scholars specifically for the purpose of analyzing rap, see Adam Krims, *Rap Music and the Poetics of Identity* (Cambridge University Press, 2000) and Robert Walser, "Rhythm, Rhyme, and Rhetoric in the Music of Public Enemy," *Ethnomusicology* 39, no. 2 (Spring / Summer 1995): 193-217.

[5] See, for example, Olufunmilayo B. Arewa, "Copyright and Borrowing," in *Intellectual Property and Information Wealth: Copyright and Related Rights*, edited by Peter K. Yu (Westport, CT: Praeger Publishers, 2007): 33-52.

[6] J. Peter Burkholder, "Borrowing," *The New Grove Dictionary of Music and Musicians*.

[7] Ibid.

4

   original and how the layers are employed in the new work), and origin (who, when, and how each work was conceived).
2. "What element or elements of the existing piece are incorporated into or referred to by the new piece, in whole or part?" Here he considers individual elements, such as instrumentation, rhythmic figures, aspects of harmony (such as a chord progression or particular sonority), texture, and timbre.
3. "How does the borrowed material relate to the shape of the new piece?" Here he considers how the structure of the new piece depends (or does not depend) on the structural elements of the original.
4. "How is the borrowed material altered in the new piece?" Original material is usually altered in some way, thus masking its origin. But Burkholder accounts for masking through alteration as a given in musical borrowing practices. In other words, alteration of borrowed material does not negate the act of borrowing or copying. The scholar's task is to determine in what way(s) the material was altered.
5. "What is the function of the borrowed material in the new piece, in musical terms?" Burkholder looks to structural and thematic elements as "initial points for composition," but also considers what he calls "other events." In other words, this question allows for the possibility that an "original" need not be quoted in full (or even at any significant length) to constitute borrowing or copying.
6. "What is the function or meaning of the borrowed material within the new piece in associative or extra-musical terms, if any?" Said differently: does the borrowed material add extra meaning for a listener?

Burkholder's typology is most useful because it provides ways for us to understand how a work may be indebted to another even in the absence of direct quotation. His questions will inform my conclusion.

## ANALYSIS

For purposes of this report, I have had the following items available for analysis:
- A recording of "Popeye" (2003), instrumental only, by Michael Bradford;
- A recording of "Crush" (2005), featuring Sky Broadus, by Michael Broadus;
- 2 recordings of "Mrs. Officer" (2008), (1) instrumental only; (2) commercial release featuring Lil' Wayne and Bobby Valenti;
- a summary report by Dr. Gregory McPherson, including his preliminary transcriptions (which I have updated and modified); and
- an audio file of an on-air session (2 December 2008) at Atlanta's V103 radio station in which the two songs were compared and discussed and transcriptions of audience member responses to this program.

I have considered the preliminary report by Dr. McPherson and agree with his finding that there is substantial similarity between the two songs. In my opinion, however, his arguments for this similarity—that the songs share "dominant guitar rhythms," "chord progressions," and the "same feel and momentum"—are not specific enough to warrant substantial similarity. My analysis instead will focus on how individual layers—guitar riffs, drum tracks, and extra-musical sounds (such as ringing telephones)—are combined

to produce a substantially similar groove. For visual reference I have constructed a groove continuum analysis for each song.

**See attached analyses of "Popeye / Crush" and "Mrs. Officer."**

A groove continuum is not meant to capture every element of a given work. Its purpose is to visually represent how particular layers of a given work interact. For these analyses I am particularly concerned with the interaction of the song's form, pre-dominant guitar riff, and drum track. I have therefore not transcribed or otherwise notated additional layers of sound.

Before attending to what is similar about the two songs, I would like to acknowledge what is different.
1. The songs have different tempos. "Mrs. Officer" runs at roughly 84 BPM (beats per minute), and "Popeye / Crush" is a bit faster, running at roughly 89 BPM.
2. The songs do not share the same harmonic pattern. Here I disagree with Dr. McPherson who noted substantial similarity in the chord progressions.
3. With the exception of running 16th notes in the hi-hat voice of both songs, the drum tracks are not the same. Running 16th notes are extremely common in contemporary hip-hop (and in disco, for that matter), and thus can be discounted as a point of originality.
4. If analyzed using western tuning, the songs can be understood to be in different keys.
5. The vocal melodies are not identical.
6. The guitar riffs (which I will discuss below) and drum loops are not of the same length and therefore do not repeat in identical patterns.
7. Although elements of the song narratives are similar (i.e., they are both "love" songs), I do not find moments of clear borrowing in the texts themselves.

Other elements, however, do speak to substantial similarity between "Popeye / Crush" and "Mrs. Officer."
1. Both songs feature guitar riffs as the main element of melodic interest and in both songs the riffs are looped throughout the song, providing a key structural element in both cases. These riffs are decorated with extra-musical sounds appropriate to each song's context. In the case of "Mrs. Officer," for example, the guitar riff underlies a recurring police siren motif sung by Bobby Valentino, emphasizing the central theme of Lil' Wayne's interaction with a police officer. And in "Crush," the guitar riff is decorated by the sound of ringing telephones, emphasizing the central theme of conversing via telephone.
2. The rhythmic motion of the guitar riffs is nearly identical, as shown in my notation.
3. The timbre (quality of sound) used in the guitar riffs is strikingly similar. This is a point worth mentioning since all instrument sounds can easily be manipulated with today's technology. In both examples, we are meant to hear "guitar" sounds, whether or not an actual guitar produced the notes.

6

4. Both songs have a similar narrative trajectory: in one case, a young woman cautioning her love interest (who has a crush on her) to slow down ("Crush"), and in the other, a female police officer infatuated with the male protagonist of the song ("Mrs. Officer"). There are many ways of spinning a love story, certainly. But of interest here is similarity of groove *combined* with the similarity of narrative, further strengthening substantial similarity between the two songs. Said differently: this particular groove was effective in telling a particular story; why not use it again?

## CONCLUSIONS

Based on the above analysis and informed by Burkholder's Typology of Musical Borrowing, I offer the following conclusions.

The alleged "borrowing" in this case is not the use of a single element or sound (i.e., this is not a case of suspected unauthorized sampling). Rather, the borrowing at hand is a question of influence, a point of departure that inspired the construction of a new groove (in "Mrs. Officer") bearing striking timbral and rhythmic similarities to the "original" work ("Crush" / "Popeye"). My analysis establishes that both songs are built around repeated guitar riffs. Riffs, in themselves, are difficult to establish as "original." Indeed, although the rhythms of the two riffs are quite similar, the harmonies of the two riffs are different. But the riffs in this case contribute to a larger construction of meaning in both songs. As discussed above, in both songs the basic guitar riff bears a similar relationship to primary rhetorical elements that help to establish the meaning of each song. In both songs, the groove runs throughout the length of the song, with only brief breaks (ruptures) in the patterns. These ruptures come at key rhetorical elements of each song. In "Crush," for example, the only break in the guitar groove pattern comes in bar 16. At this moment, the producer has filtered out *all* sounds with the exception of the sound of a ringing telephone, a central thematic device in the song. Likewise, in "Mrs. Officer," the guitar riff is nearly constant, absent only at the beginning of the introduction and end of the song (the similarity of beginning and end of the song creates symmetry) and at one important rhetorical moment of the song (bars 59-60). The break in bars 59-60 of "Mrs. Officer" parallel the break in bar 16 of "Crush": all sounds are filtered out with the exception of a key rhetorical device, that of Bobby Valentino singing / imitating a police siren. This siren imitation plays just as central a role in "Mrs. Officer" as the telephone sounds play in "Crush."

The guitar riffs also contribute to the larger construction of groove in these songs. Groove establishes a basic pattern of repetition, creating expectation for listeners. As explained above, groove is not simply a "feel", but can be concretely discussed as the pattern of repeated riffs, rhythms, and interlocking sounds that results from the layering process. Listeners well versed in a particular style of music learn to anticipate when breaks will come in a musical texture, or when a beat will come back in after it has dropped out of a texture. Ethnomusicologists Stephen Feld and Charles Keil have written extensively on the subject of groove, paying particular attention to how a groove is formed through repetition and how groove establishes listener expectations. Feld, for example, defines groove as "an intuitive sense of style as process, a perception of a cycle in motion, a form or organizing pattern being revealed, a recurrent clustering of elements

7

through time."[8] Feld (drawing on scholar Christopher Small's work) goes on to remind us that active participation in music making is not limited to musicians; in the very act of listening, an audience member participates in the making of music.[9] And for Feld, groove can also be understood as "how a socialized listener anticipates patterns in a style, and feelingfully participates by momentarily tracking and appreciating subtleties vis-à-vis overt regularities."[10]

I bring up the issue of audience participation in the construction of groove because audience perception can offer a level of analysis that uses different language but supports musicological analysis. Indeed, audience response to the V103 session aired 2 December 2008 in which the songs were compared and discussed is quite compelling. Callers noted that anyone familiar with the music business knows that producers can slow down or speed up a beat, add a new drum track, and change the key of a given record with amazing ease. Hip-hop producers have become adept at reducing samples to smaller and smaller chunks of sound and re-ordering the sampled bits so that the source material will be unrecognizable. But if random V103 audience members can hear these striking similarities, clearly the producer of "Mrs. Officer" did not hide the source material—and in particular, the riffs—adequately. Further, these riffs are the most identifiable parts of a larger groove that establishes the identity of a previously copyrighted song. I would therefore submit that taking the riff from one context ("Popeye / Crush") and inserting it into another context ("Mrs. Officer")—even though the harmonies have been changed—is taking a key element of the original's identity. **In my professional opinion, therefore, these two songs present a clear case of substantial similarity.**

*[signature]*

**Felicia M. Miyakawa, Ph.D.**
Middle Tennessee State University

---

[8] Charles Keil and Stephen Feld, *Music Grooves: Essays and Dialogues* (Chicago: University of Chicago Press, 1994), 109.
[9] Christopher Small, *Music of the Common Tongue: Survival and Celebration in Afro-American Music* (New York: Riverrun Press, 1987).
[10] Keil and Feld, 111.



**Figure 1: "Crush" (2005)**
Groove Continuum analysis
Felicia M. Miyakawa, Ph.D.
27 January 2011

BARS  1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0
           10        20        30        40        50        60        70

*melodic|----
perc.

FORM
Intro
Verse
Chorus
Bridge
Outro

*Here, melodic refers to the melodic layers of the instrumental arrangement, not to the vocal melody, which inhabits a different space in the mix. In "Crush" the primary melodic material of the instrumental layers is a 2-bar repeated guitar riff, as is notated on the following page. Spaces in the song's progression, noted with | |, indicate breaks (or ruptures) within the song's structure, and particularly within the layers where the breaks are notated.

**Melodic layer over basic beat pattern.** This 2-bar pattern guitar riff pattern is looped throughout the song except for the brief break in bar 16. The drum pattern is a 4-bar pattern. It, too, is looped throughout the song (notated above as percussion 1.) Bars 33-37 are notated as percussion 2; here, the percussion consists of only hi-hat.

"Popeye" / "Crush" transcription: 4-bar rhythmic pattern with 2-bar repeating guitar riff.





**Melodic layer over basic beat pattern.** As indicated below, the key melodic loop of this song is constructed in an 'ABAB' form, meaning that within every 4-bar loop, bars 1 and 3 of the loop are identical, and bar 4 is a variation on bar 2 of the pattern. This 4-bar pattern is looped throughout the song with the following exceptions: bars 1-4; bars 59-60; and bars 97-100. The drum track, on the other hand, is a simple 1-bar pattern, looped throughout the song.

**"Mrs. Officer" Transcription: 1-bar rhythmic pattern with 4-bar repeated guitar riff**



Mrs. Officer
Lil Wayne